IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF TEXAS

SAN ANTONIO DIVISION

| | | |
|---|---|---|
| Christopher Morales and Mary | § | |
| | § | |
| Helen Morales | § | |
| | § | |
| *Plaintiffs*, | § | Civil Action No: |
| | § | |
| v. | § | 5:22-cv-00527-XR |
| | § | |
| Specialized Loan Servicing, LLC | § | |
| | § | |
| *Defendant*, | § | |
| | § | |
| | § | |

Plaintiffs' Amended Complaint

_____

Introduction

1.  Zombie debts have become part of the vernacular over the last
    decade. A zombie debt, much like its fictitious counterpart is one that
    arises after being thought long dead. Whether by satisfaction, silence,
    or discharge in bankruptcy.

2.  Zombie mortgages, while similar to zombie debts, take on a higher
    priority as a mortgagor can lose their home.

3.  Under the Truth in Lending Act, a mortgagee is required to send
    periodic statements to the mortgagor. A failure to do so is a violation

of 15 U.S.C. § 1637. It is this failure that causes an ordinary mortgage to fester into a zombie mortgage.

4.  Here, Plaintiffs bring this action against SLS for its failure to send such statements while continuing to accrue interest. Plaintiffs seek to recover their actual damages, statutory damages, attorney's fees, and costs.

## Jurisdiction & Venue

5.  Jurisdiction of this Court arises under 15 U.S.C. § 1693m, 28 U.S.C. § 1331 under federal question jurisdiction, and 28 U.S.C. § 1367 for related state law claims.

6.  Venue is proper due to the acts and transactions having occurred here.

7.  Defendant has transacted business within this District and Division by providing mortgage servicing to Plaintiff via mail, telephone and internet services while Plaintiff was located within and permanently residing in this District and Division.

## Parties

8.  Christopher Morales is a natural person.

9.  Mary Helen Morales is a natural person.

10.  Specialized Loan Servicing, LLC is a Delaware limited liability company that may be served with process via its registered agent, United Agent Group INC., at 5444 Westheimer # 1000 Houston, Texas 77056.

Facts

11.  Mr. and Mrs. Morales purchased their home, subject to two mortgages, in 2007.

12.  At that time "80/20" mortgages were a popular financial instrument. These "piggyback mortgages"[1] typically allocate 80% of their purchase price to a conventional mortgage and the remaining 20% as a second mortgage.

13.  These mortgages require a minimal, if any, down payment from the mortgagor.

14.  Since the mortgage crisis in 2008 these piggyback loans are much less common than they once were.

15.  Mr. and Mrs. Morales made regular, on-time payments on both loans until about 2010 when their mortgage servicing transferred to Nationstar Mortgage Holdings, Inc. (now known as Mr. Cooper).

---

[1] https://www.consumerfinance.gov/ask-cfpb/what-is-a-piggyback-second-mortgage-en-1955/

16. Nationstar informed Mr. and Mrs. Morales that they no longer needed to make two payments; Nationstar had rolled their two mortgages into one.

17. They had no reason to question this, they only received monthly mortgage statements on the larger mortgage and paid it on time and in full.

18. Since 2010 they have not received any statements on the second mortgage.

19. Their credit reports have not reflected any information concerning the second mortgage.

20. They never agreed to opt-out of receiving periodic statement regarding the second mortgage.

21. Neither Mr. nor Mrs. Morales have ever filed bankruptcy.

22. Had they known the piggyback mortgage was due and owing, they would have paid it on time and in full just as they had with the primary mortgage.

23. In the summer of 2021, they received loss mitigation notices from SLS concerning the piggyback mortgage.

24. This was the first time they had heard anything about this mortgage since roughly 2010.

25. They later discovered that in 2015 servicing of the second mortgage

transferred to SLS.

26. They did not receive the "handshake" letters contemplated by 12 C.F.R. § 1026.39.

27. Not until receiving this loss mitigation paperwork as required by the CARES Act, did they learn the second mortgage was not combined with the primary mortgage 10 years ago.

28. After receiving the loss mitigation paperwork, they sent SLS qualified written request letters seeking more information.

29. SLS made meager responses, they were unable to produce more than a handful of prior periodic mortgage statements.

30. One of their letters was marked "SUPPRESSED - Bad Address" even though a letter, sent the month before, to the same address, had prompted Mr. and Mrs. Morales to call SLS.

31. The mortgage statement they received had a balance of $43,535.32, nearly twice what they agreed to pay in 2007.

32. Over half of this is fees and interest from the mortgage being unknowingly unpaid for ten years.

33. TILA requires a mortgagee mail periodic mortgage statement while a mortgage accrues interest 12 C.F.R. § 1026.

34. The second mortgage is not exempt under 12 C.F.R. § 1026.41(e).

35. SLS services more than 5,000 mortgages.

36. SLS has no legal reason to not send periodic mortgage statements in compliance with its obligations under TILA and the note.

Truth in Lending Act

37. Specialized Loan Servicing is a mortgage servicer.

38. Christopher and Mary Helen Morales are mortgagors.

39. The 20% mortgage is a "residential mortgage loan" under 12 CFR § 1026.41.

40. SLS failed to mail periodic statements in violation of 15 U.S.C. § 1637.

41. Due to Defendant's failure to mail periodic statements as required by statute, they are not allowed to accrue interest on the balance of the mortgage. 12 CFR § 1026.41(e)(6)(ii)(B).

Causes of Action

*Breach of Contract*

42. SLS is charging interest it is not allowed to collect in violation of terms of its agreement with Mr. and Mrs. Morales.

43. On information and belief, the servicing of the loan was transferred several times during the 16-year period from origination in November 2005 to FCI's welcome letter in May 2021. When the servicing of a

mortgage loan is transferred, RESPA, 12 C.F.R. § 1024.33, requires

that the transferor and transferee servicers must each send notice at

least 15 days before and no more than 15 days after the servicing

transfer, respectively.

44. Prior to the loss mitigation letters from SLS, Mr. and Mrs. Morales

had not received any servicing notices concerning the second

mortgage. They were thus unaware of the continued existence of the

second mortgage debt or who to contact concerning the loan.

45. Mr. and Mrs. Morales's non-payment on the loan was caused by the

conduct of Defendant and its predecessors-in-interest, and such

alleged default on the loan is thus excused under.

46. Because no correspondence was being provided to Mr. and Mrs.

Morales to notify them as to where payments should be sent or the

amount of the payment, this conduct caused them not to be able to

make payments on the loan, or to know about the existence of the

loan so as to pursue other options they might have had with regard to

the account, and excuses them from performance on the loan during

such time period.

47. Moreover, Defendants' predecessors-in-interest waived Mr. and Mrs.

Morales's payments on the loan and waived interest on the loan

through their course of conduct of allowing non-payment without any

collection action for over 10 years. Defendants are not entitled to now demand such strict compliance retroactively.

48. The lack of any communication with Mr. and Mrs. Morales for such an extended period of time, in violation of TILA and RESPA requirements, constituted such gross negligence as to constitute constructive fraud. This conduct induced Mr. and Mrs. Morales into a false sense of security, believing that the second mortgage had been resolved at the time of the modification, and receiving no information to the contrary. Mr. and Mrs. Morales have suffered injury as a result of being misled by such gross negligence. If they had received appropriate communications, they would have been able to take appropriate action, which could have included: refinancing the second mortgage; making payment arrangements on the second mortgage to avoid accrual of interest and charges; or combining the second mortgage with the first. Accordingly, under principles of equitable estoppel, Defendants are not entitled to collect amounts that could have been avoided if Mr. and Mrs. Morales had received appropriate notices concerning the second mortgage.

49. Under the terms of the mortgage contract, the rights and obligations of the parties are subject to the requirements and limitations of applicable law. Defendants' attempt to collect interest and fees that

were not authorized to be charged under federal and state law, as set

forth above, thus constituted a breach of contract. As a result of this

breach, Mr. and Mrs. Morales suffered damages resulting from the loss

of opportunity to obtain an affordable modified loan payment, which

otherwise would have been agreeable if not for Defendants' inclusion

of these unauthorized amounts.

*Texas Debt Collection Act*

50. Mr. and Mrs. Morales are consumers per Tex. Fin. Code §
    392.001(1).

51. SLS is a third-party debt collector as defined by Tex. Fin. Code §
    392.001(7).

52. The second mortgage is a consumer debt as defined by Tex. Fin.
    Code § 392.001(2).

53. SLS engaged in efforts to collect a defaulted mortgage.

54. In so doing SLS added interest and other amounts that are not
    allowed under law. SLS violated Chapter 392 of the Tex. Fin. Code.

55. Specifically, it:

    a. Threatened that nonpayment of a consumer debt will result in
       the seizure, repossession, or sale of the person's property
       without proper court proceedings in violation of Tex. Fin. Code
       § 392.301(a)(7);

b. Attempted to collect interest or a charge, fee, or expense incidental to the obligation unless the interest or incidental charge, fee, or expense is expressly authorized by the agreement creating the obligation or legally chargeable to the consumer in violation of Tex. Fin. Code § 392.303(a)(2);

c. misrepresenting the character, extent, or amount of a consumer debt, or misrepresenting the consumer debt's status in a judicial or governmental proceeding in violation of Tex. Fin. Code § 392.304(a)(8); and

d. using any other false representation or deceptive means to collect a debt or obtain information concerning a consumer in violation of Tex. Fin. Code § 392.304(a)(19).

Jury Demand

56. Plaintiffs demand a trial by jury in this matter.

Prayer for Relief

WHEREFORE, the Plaintiffs requests that the Defendant, Specialized Loan Servicing, LLC be cited to appear and answer, and that on final hearing the Plaintiffs have judgment against the Defendant for Plaintiff's actual damages, statutory damages, attorney's fees and costs in amount within the

jurisdictional limits of the court, together with prejudgment and post-

judgment interest as provided by law, costs of court and for such other and

further relief, at law or in equity to which the Plaintiffs are justly entitled.

Dated: June 14, 2022                    Respectfully Submitted,

                                        /s/William M. Clanton
                                        William M. Clanton
                                        Texas Bar No. 24049436

                                        Law Office of Bill Clanton, P.C.
                                        926 Chulie Dr.
                                        San Antonio, Texas 78216
                                        210 226 0800
                                        210 338 8660 fax
                                        bill@clantonlawoffice.com