IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| CHRISTOPHER MORALES, MARY HELEN MORALES, §§§§§§§§§§§<br>    *Plaintiffs* | |
| -vs- | SA-22-CV-00527-XR |
| SPECIALIZED LOAN SERVICING, LLC, | |
|     *Defendant* | |

**ORDER**

On this date, the Court considered Plaintiffs' motion to remand (ECF No. 21), Defendant's response (ECF No. 22), and Plaintiffs' reply (ECF No. 24). After careful consideration, the motion to remand is **DENIED**.

**BACKGROUND**

Plaintiffs Christopher and Mary Helen Morales seek to recover interest and fees that they allege have wrongfully accrued in connection with the second mortgage on their home as a result of Defendant Specialized Loan Services, LLC's failure to send statements and notices required under Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq.*, and the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605 *et seq.*

Plaintiffs purchased their home in 2007 subject to two mortgages: one for 80% of the purchase price and a second for 20% of the purchase price. *See* ECF No. 2 at 7–8. Plaintiffs paid two mortgages each month, one for the 80% loan and another for the 20% loan. *See id.* at 8. Sometime in 2010, after the mortgage crises of 2008, servicing of both mortgages was transferred to Nationstar Mortgage Holdings, Inc. ("Nationstar"). *Id*. Plaintiffs allege that Nationstar informed Plaintiffs that the two mortgages had been combined and that they no longer needed to make dual

payments. *Id*. Thereafter, Plaintiffs assert that they only received the larger monthly mortgage statement, which they routinely paid. *Id.* They allege that they have not received any mortgage statements regarding the smaller of the two mortgages since 2010. *Id.*

Eleven years later, in 2021, Plaintiffs allege that they received loss mitigation notices from Defendant Specialized Loan Services, LLC ("SLS"), the servicer of the second, 20% mortgage, informing Plaintiffs that they were in default. *Id.* at 9. Upon further inquiry, Plaintiffs learned that servicing of the secondary mortgage was transferred from Nationstar to SLS in 2015, and that, contrary to their initial understanding, the two mortgages were not merged under Nationstar. *Id*.

Plaintiffs filed their original petition in state court on April 26, 2022, alleging that that Defendant violated provisions of TILA and its implementing regulations by failing to mail periodic statements on the 20% mortgage and violated RESPA by failing to inform them of the servicing transfers. ECF No. 2 at 10–11. The original petition asserts claims for breach of contract and violations of the Texas Debt Collection Act ("TDCA"), TEX. FIN. CODE §§392.001 *et seq*, stemming from these federal violations. *See id.* at 11–15. Defendant was served with the original petition on May 11, 2022, and timely removed the case to this Court on May 24, 2022, based on federal question jurisdiction and diversity jurisdiction. *See* ECF No. 1 at 2–5.

On May 31, the Court ordered supplemental briefing on the question of subject matter jurisdiction. ECF No. 7 at 2. The Court was not convinced that it had federal question jurisdiction because, although the original petition alleged that Defendant violated TILA and RESPA, those violations were raised in the context of a state-law claim for breach of contract. Defendant also premised removal on diversity jurisdiction, but the original petition asserted that the amount owed on the mortgage at issue is only $43,535.32—less than the jurisdictional amount of $75,000. *Id.* In the briefing that followed, Plaintiffs maintained that they were *not* seeking statutory damages

under TILA or RESPA, but were simply alleging that Defendant violated the contract, which required compliance with "applicable law." *See* ECF No. 14. However, this briefing was undermined by the filing of Plaintiffs' first amended complaint, which is nearly identical to the original petition except that it alleges federal question jurisdiction under 28 U.S.C. § 1331 and supplemental jurisdiction under 28 U.S.C. § 1367. ECF No. 9 ¶ 5.

On August 24, 2022, Plaintiffs moved to remand, arguing that the Court lacks subject matter jurisdiction. *See* ECF No. 21.[1] Specifically, Plaintiffs argue that this case must be remanded because "taking Defendant at its word, Plaintiffs' claims are a legal and factual fiction" and, accordingly, do not have standing to assert their claims in federal court. ECF No. 21 ¶ 22 (citing Defendant's answer and counterclaim for attorney's fees and costs for filing a groundless pleading pursuant to Tex. Civ. Prac. & Rem. Code §§ 9.011 *et seq.*).

## DISCUSSION

### I. Legal Standard

On a motion to remand, a court must consider whether removal to federal court was appropriate. Removal is proper if the case could have been filed in federal court in the first instance. The removing party bears the burden of showing that federal jurisdiction exists and that removal was proper. *De Aguilar v. Boeing Co.*, 47 F.3d 1404, 1408 (5th Cir. 1995).

#### A. Standing

Article III of the United States Constitution limits the jurisdiction of federal courts to "cases" and "controversies." U.S. Const., Art. III, § 2. The "case or controversy" requirement defines the purview of the federal judiciary and several Article III doctrines limit which cases the

---

[1] Because it addresses the Court's subject matter jurisdiction, Plaintiffs' motion to remand is not subject to the 30-day deadline set forth in 28 U.S.C. § 1447(c). *See In re Shell Oil Co.*, 932 F.2d 1523, 1527 (5th Cir. 1991) ("As amended, § 1447(c) requires that motions for remand must be made within 30 days of removal, except in cases in which the court lacks subject matter jurisdiction.").

3

federal judiciary can hear, i.e., what cases are "justiciable." *See Allen v. Wright*, 468 U.S. 737 (1984), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.,* 572 U.S. 118 (2014).

The constitutional minimum for standing requires three elements. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). First, plaintiffs must have suffered an injury in fact – an "invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical." *Id.* "Second, there must be a causal connection between the injury and the conduct complained of . . . ." *Id.* Finally, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 561. "The party invoking federal jurisdiction bears the burden of establishing these elements." *Id.* Each element must be supported "with the manner and degree of evidence required at the successive stages of the litigation." *Id.* At the pleading stage, allegations of injury are liberally construed. *See id.* ("[O]n a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim.'") (quoting *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 889 (1990))).

### B. Federal Question Jurisdiction

Federal district courts have original jurisdiction "over two general types of cases: cases that arise under federal law . . . and cases in which the amount in controversy exceeds $75,000 and there is diversity of citizenship among the parties." *Home Depot U. S. A., Inc. v. Jackson*, 139 S. Ct. 1743, 1746 (2019) (citing to 28 U.S.C. §§ 1331 and 1332(a)). The former is known as "federal-question jurisdiction" and the latter as "diversity jurisdiction." Any civil action of these types that is brought in state court "may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."

4

28 U.S.C. § 1441(a). Assuming the Court has subject matter jurisdiction, the case may proceed in federal court.

To determine whether the District Court has subject matter jurisdiction, courts abide by the "well-pleaded complaint rule," which states that the basis for federal jurisdiction, whether that be federal question or diversity, must be "presented on the face of the plaintiff's properly pleaded complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987) (internal citations omitted). "A federal question exists 'only [in] those cases in which a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'" *Singh v. Duane Morris LLP*, 538 F.3d 334, 337–38 (5th Cir. 2008) (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Tr.*, 463 U.S. 1, 27–28 (1983)). The latter test is met where "a state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Id.* at 338 (quoting *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005)).

For claims that have either federal-question or diversity jurisdiction, federal courts may exercise supplemental jurisdiction over state-law claims so long as they form part of the same case or controversy as the federal claims, 28 U.S.C. § 1367, in that they "derive from a common nucleus of operative fact." *Mine Workers v. Gibbs*, 383 U. S. 715, 725 (1966).

**II.    Analysis**

    **A. Standing**

Plaintiffs argue that Defendant "pleads itself out of federal jurisdiction," suggesting that, because Defendant disputes their claims, it cannot satisfy its burden of establishing that Plaintiffs have standing to raise these claims in federal court. *See* ECF No. 21. This is incorrect, logically

5

and legally. As a practical matter, recognizing Plaintiffs' theory of standing would essentially extinguish the right to remove altogether, given that most defendants deny liability from the outset of the case. Legally, Plaintiffs' argument fails because federal question jurisdiction is based on the allegations on the face of a plaintiff's well-pleaded complaint rather than the assertions in a defendant's answer or counterclaim. Indeed, it is well established that courts cannot look to the defenses enumerated in a defendant's answer to determine whether federal question jurisdiction exists. *See Elam v. Kansas City S. Ry. Co.*, 635 F.3d 796, 803 (5th Cir. 2011) ("That federal law might provide a defense to a state-law claim does not create federal question jurisdiction.").

Plaintiffs correctly note that Defendant bears the burden of establishing this Court's jurisdiction, including the elements of standing. *Lujan*, 504 U.S. at 560. They are also correct that courts in the Fifth Circuit have remanded cases to state court for failure to satisfy federal standing requirements. *See, e.g.*, *Immigr. Reform Coal. of Tex. v. Texas*, 706 F. Supp. 2d 760, 765–65 (S.D. Tex. 2010) [hereinafter *IRCOT*] (remanding case to state court, "which can then make a determination as to whether and in what manner the suit may proceed" based on Texas's "more permissive" approach to standing). In such cases, however, courts look to the allegations in the complaint to determine whether the plaintiff has standing to assert claims in federal court. *Lujan*, 497 U.S. at 889 (noting that, at the pleading stage, courts should "presum[e] that general allegations embrace [ ] specific facts [ ] necessary to support the claim"); *see, e.g.*, *IRCOT*, 706 F. Supp. 2d at 765 (concluding that taxpayers' state-court challenge to Texas's residency qualifications for financial aid and in-state tuition could not support Article III's "particularized injury" requirement, but "mak[ing] no determination as to whether IRCOT's allegations are sufficient to confer standing in state court"). In other words, at this stage, Defendant bears the

burden of demonstrating that the allegations in Plaintiffs' state-court petition can support federal jurisdiction. Defendant has done so in this case.

First, Plaintiffs have sufficiently alleged that they have suffered concrete injuries in fact in the form of actual monetary damages, including wrongfully accrued interest and fees that have nearly doubled the balance of the original loan. *See* ECF No. 2 at 22–23. Such damages undoubtedly constitute an injury in fact. *See TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2198 (2021) ("Monetary harms readily qualify as concrete injuries under Article III").

Plaintiffs' failure to receive periodic statements in connection with the secondary mortgage or any notice that their loan had been transferred to a new servicer are statutorily recognized injuries. *See* 15 U.S.C. § 1640 (describing civil liability for TILA violations); U.S.C. § 2605(f) (providing for damages in connection with RESPA violations, including failure to notify borrowers about servicing transfers); *see also In re Regions Bank ATM Fee Notice Litig.*, No. 2:11-MD-2202-KS-MTP, 2011 WL 4036691, at *4 (S.D. Miss. Sept. 12, 2011) ( "Congress created a statutory right to a particular form of notice, and Plaintiffs allege that Defendant did not provide it. That is a concrete, particular injury.").

Plaintiffs observe that recent decisions from the Supreme Court and the Fifth Circuit cast doubt on whether a bare violation of such a statutory notice provision constitutes an injury in fact. *See* ECF No. 7 at 5 (citing *Perez v. Veselka, Bragg & Allen, P.C.*, 45 F.4th 816, 823–25 (5th Cir. 2022)); *see also Spokeo, Inc. v. Robins*, 578 U.S. 330 (2016); *Ramirez*, 141 S. Ct. at 2190. These cases, however, are concerned with the speculative nature of the injuries caused by the applicable statutory violations alone. *See Perez*, 45 F.4th 816, 823 (concluding that plaintiff's "confusion" over a misleading letter that violated the Fair Debt Collection Practices Act was not a concrete, particularized injury); *Spokeo*, 578 U.S. at 342 ("[Plaintiffs] cannot satisfy the demands of Article

III by alleging a bare procedural violation. A violation of one of the [Fair Credit Reporting Act]'s procedural requirements may result in no harm."); *Ramirez*, 141 S. Ct. at 2210 ("The mere presence of an inaccuracy in an internal credit file, if it is not disclosed to a third party, causes no concrete harm."). The Court need not examine the precise limits of this jurisprudence here, however, given that Plaintiffs explicitly allege that they have suffered pecuniary harm.

Second, Plaintiffs' injury is directly tied to Defendant's alleged failure to send periodic mortgage statements. Arguably, if Defendant had sent the notices, Plaintiffs would have continued paying the dual balances and would not have incurred the interest and fees Plaintiffs seek to challenge. *See* ECF No. 2 at 21. The failure to do so is the but-for cause of Plaintiffs' monetary injury. *Lujan*, 504 U.S. at 560.

Finally, in their Prayer for Relief, Plaintiffs request that this Court redress these injuries with "actual damages, statutory damages, attorney fees, and costs." *See* ECF No. 2 at 27. District courts regularly issue awards of damages; thus, their injury is one readily addressable by this Court. Accordingly, the Court concludes that the allegations in Plaintiffs' original petition satisfy the federal standing requirements.

### B. Federal Question Jurisdiction

District courts must have subject matter jurisdiction, either federal question, diversity, or supplemental jurisdiction, over each claim that is removed to federal court. Claims for violations of TILA and RESPA clearly arise under federal law and, accordingly, clearly give rise to federal question jurisdiction under 28 U.S.C. § 1331. *See Fairley v. Turan-Foley Imports, Inc.*, 65 F.3d 475, 482 (5th Cir. 1995) (holding that district court had subject matter jurisdiction to consider a TILA claim); *Perez v. Wells Fargo USA Holdings, Inc.*, No. 7:19-CV-317, 2019 WL 6687704, at

\*3 (S.D. Tex. Dec. 6, 2019) ("Courts have routinely held that allegations of violations of RESPA give rise to federal question jurisdiction."); *see id.* at \*3 n.30 (collecting cases).

Jurisdiction is less certain where, as here, a plaintiff alleges violations of federal law in the context of a state-law claim. To create federal question jurisdiction, the complaint must establish that "federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law." *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 690 (2006); *Borden v. Allstate Ins. Co.*, 589 F.3d 168, 172 (5th Cir. 2009). Federal question jurisdiction does not arise from the "mere presence of a federal issue in a state cause of action." *Merrell Dow Pharms., Inc. v. Thompson*, 478 U.S. 804, 813 (1986); *see also Singh v. Duane Morris, LLP*, 538 F.3d 334, 338 (5th Cir. 2008). The Supreme Court has not "treated 'federal issue' as a password opening federal courts to any state action embracing a point of federal law." *Grable*, 545 U.S. at 314.

This Court has previously observed that "[b]reach of contract is plainly a state law claim, and the mere reference to a federal statute does not transform that state law claim into one arising under federal law." *Kinnie v. Freedom Mortg. Corp.*, No. SA-20-CV-178-XR, 2020 WL 1284831, at \*3 (W.D. Tex. Mar. 17, 2020) (citing *MSOF Corp. v. Exxon Corp.*, 295 F.3d 485, 490 (5th Cir. 2002)). Plaintiffs' original petition, however, contains fair more than a "mere reference" to a federal statute. Following the factual allegations in their original petition, Plaintiffs include a section titled "Truth in Lending Act" in which Plaintiffs allege (i) that their mortgage is subject to 12 C.F.R § 1026.41, the TILA regulation requiring periodic statements, and (ii) that Defendant failed to send the required periodic statements. *See* ECF No. 2 at 10–11. Based on this alleged violation, Plaintiffs seek to recover the retroactive fees allegedly charged by SLS and prohibited under 12 C.F.R § 1026.41(e)(6)(ii)(B). *See id.* at 11 (asserting that Defendant is "not allowed to

accrue interest on the balance of the mortgage"). Still, Plaintiffs style these alleged violations of federal law not as a claim under TILA but as a breach of the mortgage contract, under which "the rights and obligations of the parties are subject to the requirements and limitations of applicable law." ECF No. 2 at 13. Plaintiffs' breach-of-contract claim repeatedly references alleged TILA and RESPA violations, along with several common-law causes of action. *See, e.g.*, *id.* at 12 ("The lack of any communication with Mr. and Mrs. Morales for such an extended period of time, in violation of TILA and RESPA requirements, constituted such gross negligence as to constitute constructive fraud.").

Despite its stray references to "negligence" and "constructive fraud," Plaintiffs' breach-of-contract claim—including their claim for damages—is wholly premised on Defendant's obligations under federal law. The dispute rests entirely on the correct interpretation of the parties' respective rights and obligations under TILA, RESPA, and federal regulations. Like courts considering wrongful foreclosure claims asserting violations of federal housing regulations, the Court finds that Plaintiffs' breach-of-contract claim raises a federal issue that is actually disputed and substantial. *See Buis v. Wells Fargo Bank, N.A.*, 401 F. Supp. 2d 612, 616–17 (N.D. Tex. 2005); *Leggette v. Wash. Mut. Bank, F.A.*, No. 3:03–CV–2909–D, 2005 WL 2679699, at *4 (N.D. Tex. Oct. 19, 2005); *Henry v. Bank of America, N.A.*, No. 4:12–CV–786–A, 2012 WL 6730718, at *3–4 (N.D. Tex. 2012).

Even after finding a substantial federal issue, courts in the Fifth Circuit have remanded home foreclosure disputes because those cases are "typically governed by private contract and state law," and exercising federal jurisdiction in such cases "portends a significant transfer of judicial responsibilities from state to federal courts." *Leggette*, 2005 WL 2679699, at *4. The mere fact that this case involves real property is insufficient to defeat diversity jurisdiction. *Grable* itself

10

involved a state-law claim for quiet title premised on the IRS's failure to properly notify Grable of the seizure of its property to satisfy a tax delinquency in the manner required by federal law. The Supreme Court found a substantial federal interest in the state action, because "[t]he meaning of the federal tax provision is an important issue of federal law that sensibly belongs in federal court." *Grable*, 545 U.S. at 315.

This case is not a foreclosure action; it is an action challenging Defendant's attempt to collect fees and interest that are allegedly prohibited under TILA and RESPA. Thus, the interpretation of federal law is not incidental to Plaintiffs' claim for breach of contract—federal law is the only basis for this suit. Indeed, even Plaintiffs' amended complaint concedes the existence of a federal question. *See* ECF No. 9 ¶ 5. Under these circumstances, there is little risk that exercising jurisdiction over this case will disturb the balance of federal and state judicial responsibilities.

This Court will also exercise supplemental jurisdiction over Plaintiffs' remaining claim for violations of the Texas Debt Collection Act ("TDCA"). Plaintiffs' TDCA claim concerns the same parties, the same property, the same mortgage, and the same conduct as their claim for breach of contract. Indeed, the alleged violation of the TDCA for attempting to collect wrongfully accrued interest is premised on the very same TILA violation alleged in Plaintiffs' breach-of-contract claim. That is, Defendant cannot be liable under the TDCA unless the interest it sought to collect was in fact prohibited under TILA. Accordingly, Plaintiffs' claims "are such that [they] would ordinarily be expected to try them all in one judicial proceeding." *Gibbs*, 383 U.S. at 725. Because all of Plaintiff's claims share a common nucleus of operative fact, this Court can and will exercise

supplemental jurisdiction over the TDCA claim.[2] *Id.* The Court concludes that Defendant has met its burden of demonstrating that removal was proper.

## CONCLUSION

For the reasons stated herein, Plaintiffs' motion to remand (ECF No. 21) is **DENIED**.

It is so **ORDERED**.

**SIGNED** this 31st day of October, 2022.

                                            XAVIER RODRIGUEZ
                                            UNITED STATES DISTRICT JUDGE

---

[2] The district court may decline to exercise supplemental jurisdiction over pendant state-law claims if (1) the claim raises a novel or complex issue of state law, (2) the claim substantially predominates over the claim(s) over which the district court has original jurisdiction, (3) the district court has dismissed all of the claims over which it has original jurisdiction, or (4) in "exceptional circumstances" when there are "other compelling reasons for declining jurisdiction." 28 U.S.C. § 1367(c). In deciding whether to exercise supplemental jurisdiction, a court must weigh the above four statutory factors as well as the common law considerations of economy, convenience, fairness, and comity. *Enochs v. Lampasas Cnty.*, 641 F.3d 155, 159 (5th Cir. 2011). None of these circumstances exist here.