IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| Christopher Morales and Mary Helen Morales § § *Plaintiffs*, § § v. § § Specialized Loan Servicing, LLC, § § *Defendant*. § | Civil Action No: | 5:22-cv-00527-XR |

Plaintiff's Response to Defendant's Motion for
Summary Judgment Pursuant to Fed. R. Civ. P. 56

_____

# Introduction

1. When a loan is charged off, a creditor who wants to continue to charge interest is required to send periodic statements. When those statements are not sent, the creditor can't charge interest. Here, SLS's account ledgers show the loan in question was charged off. During this charge-off period SLS failed to send periodic statements. Will this Court allow SLS to saddle Plaintiffs with interest they can't charge?

# Background

2. In 2007, Plaintiffs purchased a home subject to two mortgages, sometimes referred to as "piggyback mortgages." These mortgages typically split up the

payment into an 80/20 payment scheme, allocating 80% of the purchase price to a conventional mortgage and the second mortgage covers the other 20%. Plaintiffs made regular, on time payments on both loans until about 2010, when the servicing of their primary mortgage was transferred to Nationstar Mortgage Holdings, Inc. They were informed by Nationstar that they longer needed to make two separate payments, that their two mortgages had been rolled into one. They did not receive any information contrary to this and took Nationstar's word for it.

3. In the summer of 2021, Plaintiffs started receiving loss mitigation notices from SLS, concerning the 20% mortgage. Had they known they had to make payments on the 20% mortgage they would have done so. Plaintiffs filed suit in Bexar County on April 26, 2022. On May 24, 2022, SLS removed this action. SLS filed its motion for summary judgment on October 31, 2022. Plaintiffs filed a Rule 56(d) motion to secure additional discovery responses and this Court generously granted extra time to file this response.

## Legal Standard

4. When considering a motion for summary judgment, the evidence is viewed in the "light most favorable to the nonmovant." *Minter v. Great Am. Ins. Co. of N.Y.*, 423 f.3D 460, 465 (5th Cir. 2005). To survive a motion for summary

judgment, the nonmovant "need only present evidence from which a jury might return a verdict in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257, 106 S. Ct. 2505, 91 L. Ed 2d 202 (1986).

5. As the Court will see, SLS admits they suppressed the sending of periodic statements, and their account ledgers show it marked the Moraleses loan as "charged off." There is a period of months where these two conditions overlapped. During this overlap period the loan should not have accrued interest.

Argument and Authorities

6. SLS makes a motion for summary on four grounds. Accordingly, Plaintiffs respond to each.

### A. Plaintiff's TILA Claim is not barred by limitations

*I.  SLS's authority is unpersuasive.*

7. Each of the TILA cases cited by SLS concerns defective disclosure in cases filed more than a year after the corresponding offer of credit. *Moor* concerns a credit transaction consummated "without giving the required disclosures." *Moor v. Travelers Ins. Co.*, 784 F.2d 632, 633 (5th Cir. 1986). Moor filed suit in 1985 for Travelers failure to provide the required disclosures in 1978. *Moor* is inapplicable here as it does not consider a creditor's ongoing obligation to send periodic statements.

8. SLS refers to *Bourgeois v. Haynes Constr. Co.*, 728 F.2d 719 (5th Cir. 1984) in support of its statute of limitations argument. *Bourgeois* deals with the consummation of a transaction and Louisiana contract law. In that case there was never a consummation of the transaction, and the case never touched on TILA limitations, only what constitutes consummation under Louisiana law. Again, *Bourgeois* does not consider a creditor's ongoing obligation to send periodic statements.

9. Similarly, the other cases cited involve disclosures required at the consummation of the loan. *Bittinger v. Wells Fargo Bank NA*, 744 F. Supp. 2d 619, 628 (S.D. Tex. 2010) (Alleging failure to provide TILA disclosures in 2007; case filed in 2010). *Williams v. Countrywide Home Loans, Inc.*, 504 F. Supp. 2d 176 (S.D. Tex. 2007) (Suit filed in 2006 for "failure to make certain required disclosures" as part of a 1995 loan.) at 183. *In re Smith*, 737 F.2d 1549, 1550 (11th Cir. 1984) (finding that a suit filed in 1980 for nondisclosure at the time of a 1977 loan was untimely). *Wachtel v. West*, 476 F.2d 1062, 1063 (6th Cir. 1973) (Plaintiffs sued in 1972 for a lack of TILA disclosures on a loan taken out in 1970). None of these cases consider a creditor's ongoing obligation to send periodic statements.

10. The most persuasive case SLS cites is *Hibbs v. Wells Fargo Bank, N.A.*, No. 17-615-SDD-RLB, 2018 U.S. Dist. LEXIS 110600, at *14 (M.D. La. 2018). While

this case makes the best argument, it is concerned with "continuing violations" that reach back from 2011 to 2017 dealing with forced place insurance.

11. Taking SLS's argument on its face, they seem to say that TILA imposes no duty to comply a year after a loan is originated. This position does not make sense legally or logically. It would mean that a lender can violate the provisions of TILA unrelated to the initial disclosures more than one year after a loan is originated without repercussion.

12. Here, the Moraleses are not complaining about the initial disclosures when they took out the loan in 2007. Nor are they trying to reach back to 2007 to complain about some continuing violation.

13. The Moraleses did not receive, because SLS did not send, per its TILA obligation, periodic statements. SLS claims that after statements were returned, they stopped sending them. There is no exception for this in TILA. They claim that the Moraleses moved. But there is no prohibition on a consumer residing somewhere other than the property address. Neither is there a law prohibiting ownership of more than one home.

14. Mr. and Mrs. Morales testify that they never forwarded their address with the USPS, never declined mail, and had family living in their home that would bundle and send their mail to them on a regular basis.

II.   *Applying Equitable Tolling*

15. Equitable tolling is to be read into every federal statute of limitations unless Congress expressly provides to the contrary in clear and unambiguous language. *See Holland v. Florida*, 560 U.S. 631, 645, 130 S. Ct. 2549, 177 L. Ed. 2d 130 (2010). *See also* Young v. United States, 535 U.S. 43, 49, 122 S. Ct. 1036, 152 L. Ed. 2d 79 (2002); *Rotella v. Wood*, 528 U.S. 549, 561, 120 S. Ct. 1075, 145 L. Ed. 2d 1047 (2000); *Holmberg v. Armbrecht*, 327 U.S. 392, 397, 66 S. Ct. 582, 90 L. Ed. 743 (1946). *Cf. TRW, Inc. v. Andrews*, 534 U.S. 19, 122 S. Ct. 441, 151 L. Ed. 2d 339 (2001) (questioning whether discovery rule is generally applicable to federal statutes of limitation, but not questioning general applicability of equitable tolling). *But cf. United States v. Beggerly*, 524 U.S. 38, 118 S. Ct. 1862, 141 L. Ed. 2d 32 (1998) (equitable tolling inconsistent with Quiet Title Act because Act provides an explicit discovery rule).

16. "All Circuit Courts of Appeal that have addressed the question of equitable tolling have held that § 1640(e) is a statute of limitation subject to equitable tolling." *Maxwell v. Chase Home Fin. LLC*, No. H-09-4038, 2011 U.S. Dist. LEXIS 4797, at *13 (S.D. Tex. 2011) (collecting cases).

17. Since TILA does not evidence a contrary intent, equitable tolling must be read into the statute. *See Ellis v. GMAC*, 160 F.3d 703, 708 (11th Cir. 1998); *Ramadan v. Chase Manhattan Corp.*, 156 F.3d 499 (3rd Cir. 1998); *Jones v. TransOhio Sav. Ass'n*, 747 F.2d 1037 (6th Cir. 1984). Judge Richard Nygaard explained it succinctly, "Allowing lenders to violate TILA, but avoid liability if

they successfully concealed the violation from the debtor for a year, would undermine the core remedial purpose of TILA." *Ramadan,* 156 F.3d 502 (3d Cir. 1998).

18. The 5th Circuit requires concealment beyond mere non-disclosure in applying equitable tolling to TILA. *Moor*, 784 F.2d 632, 633 (5th Cir. 1986) ("To clothe himself in the protective garb of the tolling doctrine, a plaintiff must show that the defendants concealed the reprobated conduct and despite the exercise of due diligence, he was unable to discover that conduct."); *Hibbs v. Wells Fargo Bank, N.A.*, No. 17-615-SDD-RLB, 2018 U.S. Dist. LEXIS 110600, at *15-16 (M.D. La. 2018); *Bobbitt v. Wells Fargo Bank, N.A.*, Civil Action No. H-14-387, 2015 U.S. Dist. LEXIS 182840, at *7 (S.D. Tex. 2015) (applying the standard of equitable tolling when the defendant's wrongful conduct goes beyond mere non-disclosure).

19. When confronted with this issue, the Southern District's Bankruptcy Court took from other circuits and agreed that equitable tolling is applicable when analyzing claims under TILA, stating that they see "no reason to depart from the substantial precedent in favor of equitable tolling." *Harmon v. Lighthouse Capital Funding, Inc. (In re Harmon)*, Nos. 10-33789, 10-03207, 2010 Bankr. LEXIS 3836, at *12 (Bankr. S.D. Tex. 2010).

20. In the *Harmon* case, the Harmons were unaware of evidence supporting their claim until nine days after the trial had begun in their case. The court found that defendant Lighthouse caused the delay by failing to produce statements when originally requested by the Harmons. Here, like Lighthouse, SLS never sent statements to the Moraleses. When the Moraleses, like the Harmons, requested documents via qualified written requests, SLS refused to produce more than a handful of responsive documents. These documents raised more questions than they answered. Exhibits A & B. The Court should note that in *Harmon*, Judge Isgur found that equitable tolling applied.

21. The 5th Circuit further explained equitable tolling in *Rashidi v. Am. President Lines*, 96 F.3d 124 (5th Cir. 1996). *Rashidi* deals with a work-related accident aboard the U.S.N.S. COMET. The Court reasoned that "equitable tolling applies principally where the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights." *Id.* at 128. While *Rashidi* does not directly deal with TILA it speaks to need for due diligence on the Plaintiff's part. *Id.* at 128.

III. *SLS concealed its conduct*

22. First, SLS did not send the Moraleses periodic statements. See Exhibit C (Morales Affidavit) And for a period of 13 months this agrees with SLS's records. See Exhibit D and Dkt. 33 ¶ 8. Neither Mr. nor Mrs.

Morales could have engaged in due diligence until they received communications from SLS in July 2021 to the property address.

23. Second, SLS did not report the loan on Mr. or Mrs. Morales's credit reports. Exhibit E. (SLS's internal logs showing no credit reporting) (The code in question here is CR BUR RPT STATUS=N, as the Court can see with the find function in the top right-hand corner, this nonreporting shows 84 times in the history of the Moraleses servicing.) Exhibit F (email correspondence defining abbreviations).

| 1011173749 | 09/21/2015 | 31011 | NT  | Rent Zestimate®: $995/mo |
| --- | --- | --- | --- | --- |
| 1011173749 | 09/24/2015 | 1960 | NT | Billing Statement Outbound Document Imaged 09/22/2 |
| 1011173749 | 09/24/2015 | 1960 | NT | 015 |
| 1011173749 | 09/28/2015 | 31011 | NT | No additional numbers located. |
| 1011173749 | 10/12/2015 | 0 | CBR | PURCHASED<60 DAYS:SERVICE DT =  09/16/15 |
| 1011173749 | 10/12/2015 | 0 | CBR | CR BUR RPT STATUS=N;EXPIRE DT =  00/00/00 |
| 1011173749 | 10/12/2015 | 31011 | NT | No additional numbers located. |
| 1011173749 | 10/19/2015 | 0 | D28 | FORCED BILLING STATEMENT FROM REPORT R628 |
| 1011173749 | 10/26/2015 | 1960 | NT | Billing Statement Outbound Document Imaged 10/21/2 |
| 1011173749 | 10/26/2015 | 1960 | NT | 015 |
| 1011173749 | 10/26/2015 | 31011 | NT | No additional numbers located. |
| 1011173749 | 10/27/2015 | 31011 | DM | CONTACT WITH CUSTOMER CHANGED TO N |
| 1011173749 | 10/27/2015 | 31011 | DM | REC OB, CALLED B1 POSS: 210.337..3796; LB |
| 1011173749 | 10/27/2015 | 31011 | NT | Whitepages, reversed h/a: 210.337.3796; located. |
| 1011173749 | 11/10/2015 | 0 | CBR | PURCHASED<60 DAYS:SERVICE DT =  09/16/15 |
| 1011173749 | 11/10/2015 | 0 | CBR | CR BUR RPT STATUS=N;EXPIRE DT =  00/00/00 |
| 1011173749 | 11/18/2015 | 0 | D28 | BILLING STATEMENT FROM REPORT R628 |

Find (1/84)
CR BUR RPT STATUS=N

24. Third, when the Moraleses sought more information—SLS refused. Once the Moraleses suspected that second mortgage may not have been rolled into the first, they sought more information by sending SLS a qualified written request. Exhibit G. SLS's responses failed to shed any light on their situation. If SLS had produced the requested documents at this time, including the servicing file, the Moraleses would have had documentation of the TILA violation.

25. After the meager response to the first QWR, they sent a second request explaining they were requesting more limited information

and why they needed the information they requested. Exhibit H. SLS provided very little information, but did produce a document marked "SUPPRESED - Bad Address." Exhibit H.

26. SLS hid the second mortgage from Mr. and Mrs. Morales, frustrated their attempts to get more information, and charged interest while their note was charged off. The application of equitable tolling for their TILA claim is proper.

**B. Plaintiffs suffered monetary damages.**

27. SLS is correct in stating that 12 CFR § 1026.41(e)(6)(ii)(B) applies to charged off loans. But its arguments and evidence do not reconcile. First, SLS's states "There is no evidence that Plaintiff's mortgage loan was ever in charge-off status..." Dkt. 28. ¶42. Second, SLS's documents show on September 16, 2015 SLS placed the Loan in a charge off status:

| 1011173749 | 09/16/2015 | 1985 | NT  | Charge off Approved on 09/16/15 |
| 1011173749 | 09/16/2015 | 1985 | FSV | DELINQ INSP HOLD PLACED; REL DT =09/16/15 |
| 1011173749 | 09/16/2015 | 1985 | LMT | CHARGE-OFF COMPLETE  (3002) COMPLETED 09/16/15 |
| 1011173749 | 09/16/2015 | 1985 | FSV | MANUAL INSP HOLD PLACED; REL DT =09/16/15 |
| 1011173749 | 09/16/2015 | 1985 | FCO | FULL CHARGE OFF COMPLETED |

Exhibit D. (Emphasis in original).

28. Later that same day further down SLS's transaction ledger, the loan is placed in a charge off status again, and even referred it to loss mitigation.

| 1011173749 | 09/16/2015 | 1985 | LMT | CHARGE-OFF STARTED   (3001) COMPLETED 09/16/15 |
| 1011173749 | 09/16/2015 | 1985 | LMT | PURSUE CHARGE-OFF   (3000) COMPLETED 09/16/15 |
| 1011173749 | 09/16/2015 | 1985 | LMT | REFERRD TO LOSS MIT (1)   COMPLETED 09/16/15 |
| 1011173749 | 09/16/2015 | 1985 | NT  | Charge off recommended on 09/16/15 |
| 1011173749 | 09/16/2015 | 1985 | LMT | APPROVED FOR LMT 09/16/15 |

Exhibit D. (Emphasis in original).

29. In November 27, 2019, SLS's records indicated that they reversed the charge off.[1]

| 1011173749 | 11/27/2019 | 19983 | LMT | CHARGE OFF REJECT |
| 1011173749 | 11/27/2019 | 19983 | LMT | CHARGE-OFF COMPLETE (3002) UNCOMPLETED |
| 1011173749 | 11/27/2019 | 19983 | FCO | FULL CHARGE OFF REVERSED |

30. Following the charge-off, SLS admits that it failed to send statements. This failure is supported by the SLS's documents and its admissions. Exhibit H shows statements that were not sent by SLS and are watermarked with "Suppressed – Bad Address."

31. SLS admits to not sending disclosures from July 2019 to August 2021. Dkt. 33.¶ 8. ("While there was a short time where SLS acknowledges that it generated monthly statements but **did not send the monthly statements**…") (emphasis added).

32. These two time periods overlap from July 2019 to November 2019—the loan both charged-off and disclosures were not sent—therefore 12 CFR § 1026.41(e)(6)(ii)(B) applies. During this time SLS wrongfully accrued interest on the mortgage.

33. As discussed above, this could not have been discovered by the Moraleses until, at the very earliest, July 2021. The more reasonable time for discovery of

---

[1] Whether a debt accelerated and charged off for more than four years can be reversed is a question beyond the scope of this argument, but could mean that the foreclosure in 2022 was untimely.

this is November 28, 2022, when this Court compelled and SLS produced account ledger. Until this time, SLS represented, including to the Court, that the loan had never been charged off. As seen above, the account ledger shows otherwise.

34. No matter when it was discovered, the Moraleses suffered damage during the overlap of these two time periods. This Court has explained that the damages the Moraleses alleged in their pleading are "concrete injuries in the form of actual monetary damages, including wrongfully accrued interest…" Docket No. 29. The failure to receive periodic statements "in connection with [a] secondary mortgage… [is a ] statutorily recognized injur[y]." Docket No. 29.

35. This injury is supported by SLS's statements, the balance in the July 2019 statement is $20,142.25 and the November 2019 statement is $20,855.25. They were charged $713.00 in interest in violation of TILA. Exhibit I.

C. **Defendant violated the Texas Debt Collection act by misrepresenting the amount of debt.**

36. SLS made a false and misleading misrepresentations of the amount of debt owed by the Moraleses. For a period of five months, SLS had the Moraleses loan in a charged off status, while also not sending disclosures as required by statute. Defendants "misrepresent[ted] the character, extent, or amount of a consumer debt… in a judicial or governmental proceeding," in violation of the Texas Debt Collection Act by including the interest that was unlawfully

accrued in statements sent during the charge off period and after. Tex. Fin. Code § 392.304(a)(8); 12 CFR § 1026.41(e)(6)(ii)(B).

37. SLS is entitled to pursue their statutory right to exercise foreclosure and threaten the same. But they can't, in the process, misrepresent the amount of the debt. Unlike in *May* and *Cole,* the Moraleses have not challenged SLS's right to threaten foreclosure, merely that in doing so they misrepresented the amount of the debt. *Cole v. U.S. Bank Nat. Ass'n ND*, 2011 WL 3651029, *1 (S.D. Tex. 2011); *May v. Wells Fargo Bank, N.A.,* 2013 WL 4647673 (S.D. Tex. 2013).

38. Also, unlike in *May*, the Moraleses have alleged an affirmative statement violating the Finance Code. *May,* 2013 WL 4647673. They did so in their amended complaint, stating "In so doing SLS added interest and other amounts that are not allowed under law. SLS violated Chapter 392 of the Tex. Fin. Code." Dkt. 9. ¶ 54. As the Court has seen above, SLS should not have accrued interest when the Moraleses' loan was in charged off status.

39. "[A] servicer may not retroactively assess fees or interest on the account for the period of time during which" the loan was charged off. 12 CFR § 1026.41(e)(6)(ii)(B). As seen above, SLS placed the Moraleses loan in a charge off status. In doing so, SLS restricted their ability to lawfully assess interest on the account. It follows then that in any act of debt collection that proceeded

that accrual of interest, they unlawfully misstated the amount of debt, in violation of Tex. Fin. Code. § 392.304(a)(8).

40. Whether or not the Court finds that equitable tolling applies to the TILA claim, the interest that accrued in violation of TILA during the overlap period discussed above should be charged against the Moraleses. Collecting this wrongfully accrued interest violates the Texas Finance Code whether or not they can get relief under TILA.

**D. Plaintiffs establish breach of contract.**

*I.   The Moraleses gave consideration and were not the first party to breach the contract.*

41. Generally, it is true that the party who first breaches a contract can't complain about the subsequent failure of the other party to perform. *Presley v. Cooper*, 278 S.W.2d 237, 241 (Tex. Civ. App. – Amarillo 1955, *rev'd on other grounds*, 155 Tex. 168, 284 S.W.2d 138 (Tex. 1955).

42. The Moraleses were not the first party to breach the contract. Until they were told by Nationstar that their mortgages had been combined, the Moraleses made all payments on time and in full on both mortgages. The Moraleses performed their obligations under the contract; the Court can see this plainly by the amount of the note that was contracted in 2007, and the amount on SLS's first statement in 2015. Exhibit J (the note states the amount of the mortgage as $20,571. Exhibit K (SLS's first statement which shows the balance at $11,942.75). Given that interest accrued from the time the Moraleses

stopped payment on the second mortgage, while the amount is unknown to the plaintiffs at this time, it can be reasonably assumed that the Moraleses paid about half the principal balance.

43. The Moraleses are not alleging their mortgage was modified. They are alleging that there was a misrepresentation from the primary mortgage holder and the lack of notice from the servicer of the secondary mortgage substantiated the misrepresentation.

II. *The statute of frauds does not apply to Nationstar's purported modification statement.*

44. Even if the Moraleses were alleging a mortgage modification, the authority cited by SLS is unpersuasive. SLS cites the *Harris* and *Ellen* cases to attempt to establish a statute of fraud preclusion on what they purport to be an oral modification. Both cases rest on Tex. Bus. & Com. Code § 26.02, which contemplates a statue of fraud preclusion including contracts in writing for loans exceeding $50,000. *Ellen v. F.H. Partners, LLC*, 2010 WL 4909973 (Tex. App. – Austin 2010, no pet. hist.) (memorandum opinion); *In re Harris*, 2011 WL 2708691 (Bankr. S.D. Tex. 2011). Tex. Bus. & Com. Code § 26.02 ("**(b)** A loan agreement in which the amount involved **exceeds $50,000 in value**… (d) **An agreement subject to Subsection (b)** of this section may not be varied by any oral agreements or discussions…") (emphasis added).

45. The amount of the loan in this cause was $20,571 when originated, well below

$50,000. Exhibit J. In the final statement sent by SLS in March of 2022 the loan amount was $26,328. Exhibit L.

46. The purported statute of frauds preclusion is not applicable to the Moraleses second mortgage. Neither *Harris* or *Ellen* are similar to the issues presented here, the Moraleses have not alleged that the misrepresentation stemmed from SLS and the secondary mortgage, the misrepresentation occurred from the primary mortgage holder.

### III. *TILA limits the Note.*

47. The note states that "This Note is governed by federal law." ¶10 Defendant's Exhibit A. TILA applies to the calculation of interest under the note. As established above, interest accrued in violation of TILA. SLS charged this amount to the Moraleses in breach of TILA and also in breach of the note.

## Conclusion

48. The Moraleses ask the Court to deny SLS's motion.

49. They present a genuine issue of material fact on their Truth In Lending Act claim. SLS admits it did not send statements. During this time the loan was in a charge-off status. The interest accrued in this time should not be added to the balance.

50. The amount SLS claims is owed is inflated by interest that cannot be charged. This inflated balance forms the basis of the Moraleses claim under the Chapter 392 of the Texas Finance Code.

51. Finally, one of the terms of the note is that all amount charged must be allowed by applicable law. This prohibits SLS from charging the interest that accrued in violation of TILA.

52. This Court must deny SLS's motion.

Respectfully Submitted,

/s/William M. Clanton
William M. Clanton
Texas Bar No. 24049436

Law Office of Bill Clanton, P.C.
926 Chulie Dr.
San Antonio, Texas 78216
210 226 0800
210 338 8660 fax
bill@clantonlawoffice.com