IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| CHRISTOPHER MORALES, MARY HELEN MORALES, *Plaintiffs* | § § § § § § § § § § | |
| -vs- | | SA-22-CV-00527-XR |
| SPECIALIZED LOAN SERVICING, LLC, *Defendant* | | |

**ORDER**

On this day, the Court considered Defendant's motion to dismiss/motion for summary judgment (ECF No. 28), Plaintiff's response (ECF No. 39), and Defendant's reply (ECF No. 33). After careful consideration, Defendant's motion for summary judgment is **GRANTED**.

**BACKGROUND**

In 2007, Plaintiffs purchased their home located at 2938 Jasper Street, San Antonio, Texas 78223. The home was subject to two mortgages: one for 80% of the purchase price and a second for 20% of the purchase price. *See* ECF No. 2 at 7–8. This case concerns the second, 20%, loan.

For several years, Plaintiffs paid two mortgages each month, one for the 80% loan and another for the 20% loan. *See id.* at 8. Sometime in 2010, the servicing of both mortgages was transferred to Nationstar Mortgage Holdings, Inc. ("Nationstar"). ECF No. 9 at 4. Plaintiffs allege that Nationstar informed them that the two mortgages had been combined and that Plaintiffs no longer needed to make two payments. *Id.* Thereafter, Plaintiffs assert that they only received a single monthly mortgage statement, which they routinely paid. *Id.*

Eleven years later, in 2021, Plaintiffs received loss mitigation notices from Defendant Specialized Loan Services, LLC ("SLS"). SLS purported to be the loan servicer for the second,

1

20%, mortgage, and informed Plaintiffs that they were in default of that mortgage.[1] *Id*. at 4–5. Upon further inquiry, Plaintiffs learned that the second mortgage's servicing was transferred from Nationstar to SLS in 2015, and that contrary to their initial understanding, the two mortgages had not been merged under Nationstar. *Id*. SLS maintained that the 20% mortgage had a balance of $43,535.32, almost half of which were fees and interests from the prior decade of missed payments. *Id*. at 5.

Plaintiffs claim that from 2010 to 2021, they received no monthly statements for the 20% mortgage from Nationstar or SLS. Because SLS began servicing their loan on 2015, Plaintiffs claim SLS was responsible for sending periodic statements from 2015 to 2021. Defendant maintains that it sent statements from 2015 through 2019, at which point it received "insufficient address" messages from the United States Postal Service. After receiving the undeliverable communications from the postal service, Defendant admits that "from July, 2019, through August, 2021, SLS *generated* monthly statements but *did not send* the monthly statements due to having a bad address for Plaintiffs." ECF No. 28 at 5 (emphasis added). Defendant states that it "resumed monthly statements beginning September, 2021." *Id*.

Plaintiffs filed their original petition in state court on April 26, 2022, alleging violations of the (1) Truth in Lending Act ("TILA"), 15 U.S.C. § 1601 *et seq*.; (2) Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605; (3) Texas Debt Collection Act ("TDCA"), TEX. FIN. CODE §§392.001; as well as (4) breach of contract. ECF No. 2 at 6. After the case was removed to federal court on May 24, 2022, Plaintiffs filed an amended complaint on June 14, 2022 (ECF No. 9). Defendant filed a motion to dismiss/motion for summary judgment (ECF No. 28) which this Court construed as a motion for summary judgment.

---

[1] Eventually, U.S. Bank foreclosed on the 20% loan and acquired title to the Property on August 2, 2022. ECF No. 28 at 5. The property sold for $47,279.66. ECF No. 28-11.

In its motion, Defendant advanced three arguments. First, Defendant argued that Plaintiffs' TILA claim is barred by the statute of limitations, Plaintiffs suffered no damages, and Defendant complied with its statutory duty to send periodic statements. Second, Defendant maintained that the breach of contract claim fails because Plaintiff defaulted on their loan. Finally, Defendant argued that it made no false or misleading statement in violation of the TDCA and charged only valid interest. *See generally* ECF No. 28.

After performing limited, court-ordered discovery on these issues, Plaintiff responded to the motion for summary judgment (ECF No. 39), and Defendant replied (ECF No. 40).

## DISCUSSION

1. Legal Standard

The Court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56. To establish that there is no genuine issue as to any material fact, the movant must either submit evidence that negates the existence of some material element of the non-moving party's claim or defense, or, if the crucial issue is one for which the nonmoving party will bear the burden of proof at trial, merely point out that the evidence in the record is insufficient to support an essential element of the nonmovant's claim or defense. *Little v. Liquid Air Corp.*, 952 F.2d 841, 847 (5th Cir. 1992), *on reh'g en* banc, 37 F.3d 1069 (5th Cir. 1994) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

Once the movant carries its initial burden, the burden shifts to the nonmovant to show that summary judgment is inappropriate. *See Fields v. City of S. Hous.*, 922 F.2d 1183, 1187 (5th Cir. 1991). Any "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment," *Brown v. City of Houston*, 337 F.3d 539,

541 (5th Cir. 2003), and neither will "only a scintilla of evidence" meet the nonmovant's burden. *Little*, 37 F.3d at 1075. Rather, the nonmovant must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). The Court will not assume "in the absence of any proof . . . that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075.

For a court to conclude that there are no genuine issues of material fact, the court must be satisfied that no reasonable trier of fact could have found for the nonmovant, or, in other words, that the evidence favoring the nonmovant is insufficient to enable a reasonable jury to return a verdict for the nonmovant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In making this determination, the court should review all the evidence in the record, giving credence to the evidence favoring the nonmovant as well as the "evidence supporting the moving party that is uncontradicted and unimpeached, at least to the extent that evidence comes from disinterested witnesses." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 151 (2000). The Court "may not make credibility determinations or weigh the evidence" in ruling on a motion for summary judgment, *id.* at 150, and must review all facts in the light most favorable to the nonmoving party. *First Colony Life Ins. Co. v. Sanford*, 555 F.3d 177, 181 (5th Cir. 2009).

2. The Truth in Lending Act

The Truth in Lending Act, 15 U.S.C. § 1601 *et seq.*, was designed to promote the informed use of credit by assuring "meaningful disclosure of credit terms" to customers. 15 U.S.C. § 1601(a). Regulation Z, 12 C.F.R. § 1026 et. seq., requires servicers of home mortgage loans to provide consumers with periodic statements for every billing cycle. 12 C.F.R. § 10026.41(a). The

"periodic statement must be delivered or placed in the mail within a reasonably prompt time after the payment due date or the end of any courtesy period provided for the previous billing cycle." *Id*. § 10026.41(b). Regulation Z also mandates that the statement include certain contents like the amount due, amount of any late payment fees, explanations of amounts due, and certain account information. *Id*. § 1026.41(c)-(d).

Pursuant to Regulation Z, loan servicers are exempt from the periodic statement requirement if they:

> Charge [] off the loan in accordance with loan-loss provisions and will not charge any additional fees or interest on the account; and provides, within 30 days of charge-off or the most recent periodic statement, a periodic statement, clearly and conspicuously labeled "Suspension of Statements & Notice of Charge Off—Retain This Copy for Your Records."

*Id*. § 1026.41(e)(6)(ii)(B). Importantly, the servicer may not "retroactively assess fees or interest on the account for the period of time during which the" loan is charged-off. *Id*. § 1026.41(e)(6)(ii).

Accordingly, Plaintiff claims that Defendant failed to send periodic statements from 2015-2021 in violation of TILA. *See generally* ECF Nos. 9, 39. Moreover, Plaintiffs allege that Defendant "charged off" their loan from September 16, 2015 through November 27, 2019 but continued to charge interest during this time, also in violation of TILA. ECF No. 39; *see also* ECF No. 39-4. In response, Defendant maintains that Plaintiffs are barred by TILA's statute of limitations. ECF No. 28 at 7. This Court agrees in part, and finds that a portion of Plaintiffs' claims are time-barred.

TILA has a one-year statute of limitations. 15 USC § 1640(e) ("Except as provided in the subsequent sentence, any action under this section may be brought in any United States district court, or in any other court of competent jurisdiction, within one year from the date of the occurrence of the violation or . . ."). The limitations period is triggered by the statutory violation

which generally occurs "when the transaction is consummated" in that "a contractual relationship is created between" between a creditor and consumer. *Williams v. Countrywide Home Loans, Inc.,* 504 F. Supp. 2d 176, 186 (S.D. Tex. 2007), *aff'd*, 269 F. App'x 523 (5th Cir. 2008). However, for contracts between a mortgagor and a loan service provider, as is the case here, the limitations period tolls when the mortgagor receives a notice of service informing them that the loan servicing was transferred. *See Koesler v. Beneficial Fin. I, Inc*., 267 F. Supp. 3d 873 (W.D. Tex. 2016). Thus, Defendant argues that Plaintiff's cause of action accrued when they purchased the home in 2007 and executed the Note and Deed of Trust or, alternatively, when Defendant began servicing the loan in 2015. ECF No. 28 at 8.

This Court disagrees that the statute of limitations period tolled in either 2007 or 2015. Instead, this Court finds that each failure to send a monthly statement represented a distinct statutory violation with its own tolling period. Although this Court can find no precedent on this specific issue from the courts within the Western District of Texas or the Fifth Circuit, the Court finds guidance from the Western District of Michigan in *Macholtz v. Carrington Mortg. Servs., LLC*, 499 F. Supp. 3d 434 (W.D. Mich. 2020).

Similar to this case, the *Macholtz* plaintiff argued that the defendant failed to send monthly statements for approximately one and a half years. *Macholtz*, 499 F. Supp. at 451. Because "periodic statements differ from each other month to month, reflecting different balances based on previous payments, late fees, interest, and the like," the court determined that each failure to send a periodic statement constituted a separate statutory violation with its own limitations period. *Id*. at 452. This Court agrees and finds that the *Macholtz* interpretation is consistent with TILA's text

and purpose to "protect the public from unfair or deceptive" practices that may harm consumer's credit worthiness and standing.[2] 15 U.S.C. § 1769.

However, this Court is unpersuaded by Plaintiffs' argument that the statute of limitations should be equitably tolled. *See* ECF No. 39 at 6. Plaintiffs argue for tolling the limitations period because Defendant did not report the loan on Plaintiffs' credit reports and "refused to produce more than a handful of responsive documents" to Plaintiffs' document requests. *Id*. at 8–10. However, equitable tolling is available only if plaintiffs "show that the defendants concealed the reprobated conduct and despite the exercise of due diligence, [plaintiff] was unable to discover that conduct." *Moor v. Travelers Ins. Co.,* 784 F.2d 632, 633 (5th Cir. 1986). Put simply, Plaintiffs have provided no evidence that Defendant concealed their behavior. This argument is therefore unpersuasive.

Plaintiffs filed suit in federal court on April 26, 2022. ECF No. 4. Therefore, statutory violations occurring before April 26, 2021 are barred by the statute of limitations. Defendant admits that "from July, 2019, through August, 2021, SLS *generated* monthly statements *but did not send* the monthly statements." ECF No. 28 at 5 (emphasis added). Therefore, Plaintiffs' claims that Defendant did not send monthly statements from April 26 through August, 2021 were timely brought; all other alleged violations are barred by the statute of limitations.

However, Plaintiff has not pled statutory violations within the applicable time period. As previously noted, pursuant to Regulation Z, loan servicers must provide monthly statements unless they "charge off" the loan. 12 C.F.R. § 1026.41(e)(6)(ii)(B). Loans do not accrue interest during any period of which in which they are charged off. 12 C.F.R. § 1026.41(e)(6)(ii). Plaintiff provided

---

[2] Defendant's argument that "nondisclosure is not a continuing violation for purposes of the statute of limitations" is irrelevant. Case law makes clear that "nondisclosure" cases relate to disclosures (or lack thereof) occurring at the outset of a transaction. Plaintiffs' TILA claim, instead, is concerned with repeated failures to send statements.

Defendant's ledgers (ECF No. 39-4) which show that Defendant charged off their loan from September 16, 2015 through November 27, 2019. ECF No. 39 at 10; *see also* ECF No. 39-4.[3] Nonetheless, even if Defendant charged off the loan from 2015 to 2019, failed to send periodic statements during this time, and continued to charge interest, these violations are barred by the statute of limitations because all conduct occurred before April, 2021. This claim is dismissed.

3. Texas Debt Collection Act

Plaintiffs argue that Defendant violated the Texas Debt Collection Act, TEX. FIN. CODE § 392.301(a), when it (1) attempted to collect interest while the loan was charged off; (2) misrepresented the character of the debt by adding interest; (3) wrongly threatened foreclosure; and (4) used false and deceptive means to collect on the loan. ECF No. 9 at 9. Finally, Plaintiffs state that Defendant wrongly threatened foreclosure, but provide no details on when this threat occurred. *Id*. Plaintiffs filed suit in state court on April 26, 2022.

Chapter 392 of the Texas Debt Collection Act does not include a specified statute of limitations, *see* TEX. FIN. CODE § § 392 et seq, and the Supreme Court of Texas has not yet addressed determined the appropriate limitations period for the TDCA. Recently, a Texas court of appeals applied a four-year limitations period. *See Nationstar Mortg. LLC v. Barefoot*, 654 S.W.3d 440 (Tex. App. 2021), *reconsideration en banc denied* (Oct. 11, 2022), *review denied* (Mar. 3, 2023). However, in *Williams v. PHH Mortg. Corp.*, 604 F. Supp. 3d 552 (S.D. Tex. 2022), the Southern District of Texas applied a two-year statute of limitations to the TDCA, reasoning that the statute was similar to the Texas Deceptive Trade Practices Act or the common-law intentional

---

[3] The ledgers reflect the following notations: "Charge off approved," "charge-off complete," "full charge off completed," "charge-off started (3001) completed 09/16/15," "pursue charge-off, started (3000) completed 09/16/15" "referred to loss mit (1) completed 09/16/15," "charge off recommended on 09/16/15," and "approved for LMT 09/16/15." ECF No. 39-4 at 3. The ledger also shows entries on November 27, 2019 stating "charge off reject," "charge-off complete (3002) uncompleted," and "full charge off reversed." *Id*. at 13. Although Defendant argued at the May 4, 2023 status conference that the loan was never charged off, Defendant has provided no explanation as to why the note history would indicate the opposite.

tort of unreasonable collection, both of which utilize a two-year limitations period. This Court finds the reasoning articulated in *Williams* to be sound and adopts its conclusion that the TDCA, as a subset of Texas Deceptive Trade Practices Act claims, utilizes a two-year statute of limitations period. Plaintiff brought suit in state court on April 26, 2022. Because Plaintiffs' TDCA claims rely on interest charged from September 2015 through November 2019, this claim is barred by the statute of limitations.

To the extent that Plaintiffs' claims are not barred by the limitations period, the amended complaint merely cites the elements of statutory violations without providing sufficient facts to give rise to a claim for relief. Plaintiffs' TDCA claims are dismissed.

4. Breach of Contract Claims

Finally, Plaintiffs allege that Defendant breached the loan's "terms of [] agreement" by violating TILA and the Real Estate Settlement Procedures Act (RESPA) regulatory provisions requiring transferor to notify loan recipients of the transfer. At the May 4, 2023 status conference, Plaintiffs confirmed that Defendant is not a party to the loan's terms of agreement. Although Plaintiffs can sue for the underlying statutory violations, they may not sue Defendant for breaching a contract that it was not a party to.

This claim is dismissed.

## CONCLUSION

Defendant's motion for summary judgment is **GRANTED**. Plaintiff's claims are **DISMISSED**.

It is so **ORDERED**.

**SIGNED** this 12th day of May, 2023.

Xavier Rodriguez
United States District Judge